PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM WHITT, JR., | ) | CASE NO. 5:14CV886 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| ZIEGLER TIRE AND SUPPLY COMPANY, | ) ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF Nos. 36; 44] |

Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 36; 44. The Court has been advised, having reviewed the record, including the parties' briefs and the applicable law. For the reasons that follow, the Court denies Plaintiff William Whitt, Jr.'s Motion for Summary Judgment (ECF No. 36) and grants Ziegler Tire and Supply Company's Motion for Summary Judgment (ECF No. 44).

## **I. Factual and Procedural Background**

Ziegler operates a chain of automotive repair and tire sale retail stores. ECF No. 42 ¶ 1. Ziegler hired Whitt on February 18, 2008 to work as a "master certified technician" at Ziegler's Canton Center Mall location, where Whitt worked until his departure on March 1, 2014. *Id.* Throughout his employment with Ziegler, Whitt typically worked alternating five and six-day workweeks. ECF No. 39 at 54–55. The calculation of Whitt's pay is at issue

Whitt was not compensated at an hourly rate. Starting in 2007, Ziegler began to pay its service technicians through Ziegler's Flat Rate Compensation Program. ECF No. 37 at 15–16.

(5:14cv886)

For each of Whitt's last three years with Ziegler, he earned at least 63% of his total compensation from performing work under the Flat Rate Compensation Program. ECF No. 44-4 ¶¶ 5–7. Rather than paying its technicians an hourly rate for each hour actually worked, Ziegler calculates biweekly pay under the Rate Compensation Program by multiplying an individually-assigned flat hourly rate[1] by the billable hours that the technician "books" for completing jobs during the pay period. ECF No. 38 at 29. Each time a technician receives a new job, he first consults the All-Data Flat-Rate Guide, a database that estimates the number of hours that a job should take. ECF No. 38 at 23–24. The technician then assesses the particular vehicle to determine if the job may take longer than recommended to complete. ECF No. 39 at 71. If the technician believes more time is necessary, the adjusted number of hours is presented to the customer for approval. *Id.* Upon completion of the job, the technician "books," or is credited for, a number of billable hours that corresponds to the hours of labor charged to the customer on the final invoice—even if the job is actually completed in a shorter amount of time than the number that appears on the invoice. ECF No. 37 at 39–40. If the customer received a discount on the total cost, the technician does not lose credit for the billable hours worked on the job. *Id. at 40*.

Whitt initiated this lawsuit against Ziegler in the United States District Court, Northern District of Ohio on April 24, 2014. ECF No. 1. Whitt asserts three causes of action in his Amended Complaint. Count I alleges that Ziegler failed to pay the legally mandated overtime compensation, in violation of the FLSA and the analogous state statute, R.C. § 4111.03, for

---

[1] A technician's flat hourly rate is determined based on his skills and relative experience. During Whitt's tenure with Ziegler, the rates for technicians varied from $17.00 to $19.00 (or more) per billable hour, plus additional compensation of $0.25 per billable hour for each educational certification earned by a technician and an allowance of $1.00 per billable hour for a tool fund. ECF No. 37 at 24–25.

2

(5:14cv886)

hours worked in excess of forty per workweek, and that Whitt is not exempt from overtime compensation under the FLSA.  ECF No. 26 ¶¶ 18–25.  Count II alleges that Ziegler violated Ohio law requiring semimonthly payment of wages by failing to pay Whitt for all hours worked in the appropriate time period.  *Id.* ¶¶ 26–28.  Count III alleges that Ziegler failed to pay other non-exempt employees overtime compensation for hours worked in excess of forty hours per week.  *Id.* ¶¶ 29–32.  Both parties filed motions for summary judgment.  ECF Nos. 36; 44.  The parties have filed oppositions (ECF Nos. 45;  46) and replies (ECF Nos. 46; 47).  The matter is ripe for adjudication.

## **II.  Legal Standard**

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes,* 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees,* 980 F.2d 399, 403 (6th Cir. 1992).  After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  A fact is

(5:14cv886)

"material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict.  *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino,* 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment.  *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990).

The summary judgment standard does not change simply because the parties present cross-motions.  *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  Cross-motions for summary judgment do not require the court to grant judgment as a matter of law for one side or the other.  "Summary judgment in favor of either party is not proper if disputes remain as to material facts."  *Id.* (quoting *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed. Cir. 1987)).  "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Taft Broadcasting,* 929 F.2d at 248 (quoting *Mingus Constructors,* 812 F.2d at 1391).

(5:14cv886)

### III.  Discussion

**A.  Count I**

Count I alleges violations of the FLSA and R.C. § 4111.03 overtime compensation requirements.  ECF No. 26 ¶¶ 18–25.  "Even though [Whitt] asserts an overtime claim under both federal and state law, [the Court] need consider only federal law on this issue, as the Ohio statute expressly incorporates the standards and principles found in the FLSA."  *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007).  Accordingly, Whitt's federal and state-law claims may be analyzed together.

Under the FLSA, all employers are (generally) required to pay employees one and one-half times their regular rate of pay for work performed in excess of forty hours in a single week.  29 U.S.C. § 207(a)(1).  An employer that violates the overtime provision can be held liable for unpaid overtime compensation plus an equal amount as liquidated damages.  29 U.S.C. § 216(b).  The overtime requirement is subject to exceptions, however.  One such exemption, "the retail or service establishment" exemption, provides that:

> No employer shall be deemed to have violated subsection (a) by employing any employee at retail or service establishment for a workweek in excess of the applicable workweek specified therein, if:
>
> (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [29 U.S.C. § 206], and
>
> (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.  In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

5

(5:14cv886)

29 U.S.C. § 207(i). Exemptions under the FLSA are "narrowly construed to further Congress's goal of giving broad federal employment protection." *Fazekas v. Cleveland Clinic Found. Healthcare Ventures, Inc.*, 204 F.3d 673, 675 (6th Cir. 2000).

The employer has the burden of proving that the employee meets each of the exemption's requirements by "clear and affirmative evidence." *Thomas,* 506 F.3d at 501; *ACS v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006). This is not a heightened evidentiary burden. "[B]ecause establishing the applicability of an FLSA exemption is an affirmative defense, [the defendant] has the burden to establish the . . . elements by a preponderance of the evidence." *Thomas,* 506 F.3d at 501–02 (quoting *Renfro v. Ind. Mich. Power Co.,* 497 F.3d 573, 576 (6th Cir. 2007)). The ultimate question of whether an employer is exempt from overtime wage requirements is a question of law. *Ale v. TVA,* 269 F.3d 686, 691 (6th Cir. 2001).

The parties have agreed that, under 29 US.C. § 207(i), Ziegler qualifies as a retail or service establishment and that its flat-rate employees' regular rate of pay is more than one and one-half times the federal minimum wage. ECF No. 26 ¶ 13. It is also undisputed that at least half of Whitt's compensation came from work performed under the Flat Rate Compensation Program. *Id.* The only disputed issue, therefore, is whether the Flat Rate Compensation Program constitutes a commission within the meaning of the retail or service establishment exemption.

The FLSA does not define the term commission. Its meaning "finds little illumination from the sparse case law and the vague references in statutes and regulations." *Klinedinst v. Swift Investments, Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001). There is no binding authority in the Sixth Circuit to guide the Court's analysis. *Wilks et al, v. The Pep Boys*, 2006 WL 2821700, at *11 (Sept. 26, 2006) ("[T]he parties have not cited—and the court's own research has not

6

(5:14cv886)

revealed—any controlling precedent as to the proper definition of 'commission' in the FLSA context."); *cf. United States v. Keith* 559 F.3d 499 (6th Cir. 2009) ("Although unpublished decisions do not have precedential authority, they may be considered for their persuasive value . . . .") (internal citations omitted).  When addressing the definition of commission in an unreported decision, the Sixth Circuit opined that the employer must establish "some proportionality between the compensation of the employees and the amount charged to the customer." *Wilks, et al. v. The Pep Boys*, 278 F. App'x. 488 (6th Cir. 2008). *Wilks*, however, does not establish a standard for the degree of proportionality necessary for compensation to constitute a commission.

Other courts have acknowledged that some, but not absolute, proportionality is a component of all commission-based compensation methods. *See, e.g.*, *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 283 (3d Cir. 2010) ("[A] strict percentage relationship is not a requirement for a commission scheme under [29 U.S.C. § 207]."); *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 508 (7th Cir. 2007) ("The essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold."); *Herrera v. TBC Corp.*, 18 F. Supp. 3d 739, 746 (E.D. Va. 2014) ("Almost all courts construing the term 'commission' in the context of § 207(i), particularly as it relates to the extra-textual element of proportionality, have exercised a cautious and restrained approach."); *McAninch v. Monro Muffler Brake Inc.*, 799 F. Supp. 2d 807, 815 (S.D. Ohio 2011) ("Proportionality between any pay plan, however complicated the plan, requires some relationship or correlation between employee compensation and the sales of the employer.").  The Department of Labor has also endorsed the proportionality requirement.  *See* ECF No. 45-1 at 2 (DOL Field Operations Handbook stating that an employee is paid a commission when "[t]he employee is given a

7

(5:14cv886)

certain proportion" of the "flat rate" hour charged to the customer).  Relying upon the guidance available, the Court finds that, in order to qualify as "commissions on goods or services," Ziegler must demonstrate some proportionality between the compensation it paid to Whitt under Ziegler's Flat Rate Compensation Program and the amount charged to the customer for the service rendered.

Ziegler argues that the majority of courts to consider factually analogous compensation systems have held such methods to be "commissions on goods or services."  In *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251 (11th Cir. 2001), the Eleventh Circuit concluded that a flat-rate compensation system, similar to the one in the immediate case, constituted a form commission payment.  In *Klinedinst*, the employee was compensated for each paint job he performed based on the following formula: his hourly rate was multiplied by "flag hours" (billable hours) assigned to a particular job by a database utilized by the employer.  *Id.* at 1253.  As in the instant case, the "flag hours" did not reflect the actual time spent completing the job; instead, proportionality existed between the billable hours and the labor portion of the estimate.  *Id.*  Ultimately, the Eleventh Circuit concluded that the defendant's compensation system constituted a commission within the meaning of the FLSA.  This decision was reached, in part, by relying on the Department of Labor's Field Operations Handbook's guidance that auto service garages could pay employees by "flat rate" hours assigned to a job rather than actual hours worked.  *Id.* at 1255–56.

The Seventh Circuit followed the reasoning of *Klinedinst* in *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505 (7th Cir. 2007).  Sterling's mechanics were also compensated using a formula based on booked hours or "flag hours" as opposed to actual hours worked.  As in *Yi*, the Court explained:

8

(5:14cv886)

> A team of mechanics is then assigned to the job. Each member of the team keeps track of the hours he works on the job. When it's completed and the hours of the team members are added up, Sterling determines each member's compensation by multiplying (1) the number of booked hours for the job by (2) the ratio of the team member's actual hours worked to the total hours worked by the team, and then by (3) a wage, per booked (not actually worked) hour, based on the skill or quality of the individual team member.
>
> So suppose the number of booked hours assigned to the repair of a headlight is 6; a team of two mechanics completes the job in 3 hours; one member of the team, call him A, worked 2 hours and the other, B, 1 hour; and A's booked-hour rate is $20 and B's $15. Then A's compensation would be $80 and B's $30, for a total of $110. The figures for A and B are calculated as follows. A put in two-thirds of the total amount of time that it took to complete the job, and so he is credited with two-thirds of the booked hours. That is 4 hours, and when multiplied by $20 per booked hour yields $80. B put in one-third of the time, so he is credited with one-third of the booked hours, which is 2 hours, which when multiplied by $15 is $30.

*Id.* at 509. Therefore, aside from the additional multiplier to account for the fact that the work was done by teams rather than by individuals, the compensation system in *Yi* was identical to the compensation system in *Klinedinst*. Like *Klinedinst*, the method in *Yi* tied compensation to the hours of labor charged to the customer. *Id.* In holding that the compensation system constituted a bona fide commission plan, *Yi* observed that the system is both "industry-wide" and "of long-standing." *Id.* at 510–11.

Last year, a district court held that a compensation system identical to Ziegler's was a bona fide commission plan. *Herrera v. TBC Corp.*, 18 F. Supp. 3d 739 (E.D. Va. 2014). In *Herrera*, as in the case at bar, plaintiffs were paid on a flat-rate compensation system that paid the mechanics their hourly rate multiplied by the number of billable hours. *Id.* at 740. As in this case, the billable hours that the mechanic earned per job was equivalent to the hours assigned to the labor charge on the customer's bill. *Id.* In *Herrera*, the court joined the "judicial consensus that some proportionality is essential" in holding that the compensation method qualified as commission under 29 U.S.C. § 207(i). *Id.* at 747.

9

(5:14cv886)

Ziegler's position also finds support from the Department of Labor. A 2006 Opinion Letter from the Wage and Hour Division has endorsed a pay plan which, like Ziegler's Flat Rate Compensation Program, paid employees based on how many vehicles were serviced each week. 2006 DOL WH Opinion Letter FLSA 2006-15NA (June 29, 2006).[2] Under the subject compensation system, each serviced vehicle was assigned a predetermined number of flag hours, and the employee was paid for the number flag hours rather than the time actually spent on the service job. The number of flag hours booked by the employee did not change if the customer received a discount. The 2006 Opinion Letter concluded that the compensation system represents "commissions on goods or services" because the amount of the payment related to the value of the service performed. 2006 DOL WH Opinion Letter FLSA 2006-15NA (June 29, 2006). The Court finds the 2006 Opinion Letter persuasive because it analyzed a compensation system identical to Ziegler's. *See Fazekas*, 204 F.3d at 677 ("[A]n opinion of the Administrator of the Wage and Hour Division of the Department of Labor has persuasive value if the position of the Administrator is well-considered and well-reasoned.").[3]

Whitt argues that Ziegler's proposed authority is neither controlling nor persuasive as to the issue of proportionality. ECF No. 46 at 10–11. Whitt argues that the Court should follow the reasoning employed by the Middle District of Tennessee in *Wilks et al, v. The Pep Boys*, 2006 WL 2821700 (Sept. 26, 2006), later affirmed by the Sixth Circuit, on the issue of proportionality.

---

[2] The Opinion Letter may be accessed at the Department of Labor's website at http://www.dol.gov/whd/opinion/FLSANA/2006/2006_06_29_15NA_FLSA.htm.

[3] It should also be noted that Ziegler adopted its Flat Rate Compensation Program one year after the 2006 Opinion Letter issued. ECF No. 37 at 16; *cf. Yi*, 480 F.3d at 510–11 ("It is possible for an entire industry to be in violation of the Fair Labor Standards Act for a long time without the Labor Department noticing. But a more plausible hypothesis is that the auto repair industry has been left alone because the character of its compensation system has been recognized for what it is—a bona fide commission system.").

10

(5:14cv886)

In *Wilks*, the parties agreed that the employer's compensation system was based on "labor hours" assigned to a job rather than actual hours worked, but disputed whether the price charged to the customer was based on the number of labor hours allocated to the task. *Wilks*, 2006 WL 2821700, at *16. Although Pep Boys argued that a correlation existed between the price charged and the labor hours credited to the employee, the district court found that the employer "put forth neither argument nor evidence in support of the notion that employee compensation correlates with overall customer price." *Id.* at *17. In finding that Pep Boys had failed to carry its burden as a factual matter, the court reasoned:

> [T]he defendant has not met its burden of demonstrating proportionality between the plaintiffs' flat-rate wages and the charges passed on to customers, either for labor alone or for the overall task. If flat-rate compensation and labor costs were actually correlated, as the defendant claims they are, the labor costs would fluctuate based on the amount paid to the flat-rate employee tasked with completing the job. They do not. As such, it appears that the plaintiffs merely earn a predetermined amount for each task they complete and that this amount does not fluctuate in tandem with the amount charged to the customers.

*Id.* at *18. Whitt argues that, because the Sixth Circuit affirmed the district court's opinion in *Wilks et al. v. The Pep Boys*, 278 F. App'x. 488 (6th Cir. 2008), the Court must follow. The Court disagrees. Whitt's reliance on *Wilks* is misplaced. Contrary to Whitt's assertion, the Middle District of Tennessee's decision is not controlling on the Court. The unreported decision of the Sixth Circuit did not review the factual findings of the district court on interlocutory appeal. *Wilks*, 278 F. App'x at 489 (noting that the court had "no authority to review" findings of fact on interlocutory appeal and confining its inquiry into "pure questions of law"); *see also Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1023 (6th Cir. 2001). The Sixth Circuit decision merely affirmed the legal conclusion that a commission requires some proportionality. *Wilks*, 278 F. App'x at 489.

11

(5:14cv886)

The compensation system at issue in *Wilks* is distinguishable from Ziegler's Flat Rate Compensation Program. In *Wilks*, the district court found no correlation between the flat-rate compensation and labor costs because the labor costs did not fluctuate with the amount paid to the employee. *Wilks*, 2006 WL 2821700 at *18. Moreover, Whitt admitted that he booked a greater number of hours for completing a job that was invoiced for a higher number of hours than the All-Data estimate. ECF No. 39 at 80. If the Ziegler Flat Rate Compensation Program lacked proportionality, no such adjustment would occur.

Ziegler's technicians earn compensation for the same number of hours charged to the customer as labor. When additional time is necessary to complete a job—for example, because the car's age or rust made the completion of the job more difficult—the labor hours charged to the customer, as well as the hours that Whitt booked for the job, increased correspondingly. ECF No. 39 at 80. The increase in labor reflected an increase in the value of the service rendered to the customer. And, in booking a matching number of billable hours for performing a more time-consuming and therefore more valuable job, Whitt received a proportional increase in compensation in the same way that a car salesperson earns more commission on the sale of a Ferrari than a Ford Focus. *See Yi*, 480 F.3d at 508 ("The essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold."). Whitt's pay is, therefore, proportional to the work done and the value of that work to the customer. *See Parker*, 620 F.3d at 283 (declining to adopt a strict proportion requirement for commission under § 207(i)).

12

Case: 5:14-cv-00886-BYP  Doc #: 48  Filed:  08/07/15  13 of 14.  PageID #: 927

(5:14cv886)

Based on the foregoing, the Court finds that Ziegler's Flat Rate Compensation Program for its technicians constitutes a bona fide commission plan.  Ziegler has demonstrated some proportionality between the amount compensated to Whitt and the amount charged to customers.  Its payments, therefore, are commissions under § 207(i) of the FLSA.  As Ziegler has satisfied all the requirements for the retail and service exemption, it was not required to pay Whitt for overtime.  The Court grants summary judgment in favor of Ziegler on Count I.

**B.  Counts II and III**

Whitt's remaining causes of action are contingent upon Count I.  Count II alleges that Ziegler violated Ohio's semimonthly payment of wages under R.C. § 4113.15 (the "Prompt Pay Act") by failing to pay Whitt for all hours worked in the appropriate time period.  ECF No. 26 ¶¶ 26–28.  Whitt's sole contention of unpaid wages is that he did not receive overtime compensation to which he was entitled.  The Court has held that Ziegler's Flat Rate Compensation Program for its technicians constitutes a bona fide commission plan and, therefore, Whitt is not entitled to overtime.  The Court grants Ziegler summary judgment on Count II.

Count III alleges that Ziegler failed to pay other non-exempt employees overtime compensation for hours worked in excess of forty (40) hours per week at the Whitt's former work location and all other locations where Ziegler operates its retail service establishments.  ECF No. 26 ¶¶ 29–32.  As the Court has held, Ziegler is not required to pay overtime to either Whitt or other service technicians paid under the Flat Rate Compensation Program.  Therefore, there is no collective action to certify.  The Court grants Ziegler summary judgment on Count III.

(5:14cv886)

## IV. Conclusion

For the reasons discussed above, the Court grants Ziegler's Motion for Summary Judgment (ECF No. 44) and denies Whitt's Motion for Summary Judgment (ECF No. 36).


IT IS SO ORDERED


| August 7, 2015 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
|  | United States District Judge |